**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| HOSSEIN SARRAMI et al., | * | |
| Appellants, | * | |
| v. | * | Civil Action No. AW-05-1891 |
| | * | |
| MARYAM SADHEGI, | * | |
| Appellee. | | |

**<u>MEMORANDUM OPINION</u>**

This appeal arises from several orders of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"). In particular, Appellants Hossein Sarrami and F&F, Inc. ("Appellants") contend that the Bankruptcy Court erred when it entered a series of orders authorizing the sale of real property located in Glendale, California (the "Property"), against which Appellants hold secured liens. The Bankruptcy Court vacated a consent order which provided that Appellants' secured liens would be paid at closing, ruling instead that the net proceeds of the sale must be placed in escrow pending a final determination of the validity of Appellants' liens. Appellants also argue that the Bankruptcy Court abused its discretion by entering an order that allows litigation with respect to the ownership of the Property to proceed in California state court.

Because this Court has reviewed the entire record and has carefully examined the parties' submissions, "the decisional process would not be significantly aided by oral argument." Bankr. R. 8012 (2005). For the reasons that follow, this Court affirms.

**I.    <u>FACTUAL & PROCEDURAL BACKGROUND</u>**

Prior to the initiation of the underlying bankruptcy case, rights and interests in the Property

1

were being contested in a divorce proceeding between the Appellee, Maryam Sadhegi ("Appellee") and her estranged husband, Firooz Sadhegi, which was (and apparently remains) pending in California state court. Appellee claims that her husband is the beneficial owner of the Property and that transfer of legal title to E. West LLC (the "Debtor"), an entity managed in part by Appellee's brother-in-law, was effected solely to deprive her of the opportunity to satisfy spousal and child support claims against her husband, which are purportedly in excess of $400,000.[1]  Appellee also claims that the deeds of trust held by Appellants, who are allegedly family members and business associates of her estranged husband, are invalid. Appellee urged the California court to void the liens held by Appellants and to transfer title and ownership of the Property to her.

By all accounts, Appellee had reason to be pleased with the course of litigation in the California court. After Appellee filed a *lis pendens* against the Property, the Debtor moved to intervene in the litigation and have the *lis pendens* expunged, claiming that it interfered with a proposed sale of the Property. Following a hearing, the California court denied the Debtor's motion and found that Appellee had "established a valid claim to the subject property." The California court further noted that "[Appellee] has established that the complicated financial dealings of [the Debtor] and various third parties . . . were on behalf of [Appellee's husband] for the purpose of obfuscating [Appellee's husband's] interest in the subject property." After the California court denied the motion to expunge the *lis pendens*, Appellant F&F, Inc., an entity owned in part by Appellee's brother-in-law (who is, as noted above, also a principal of the Debtor) moved to foreclose its deed of trust on the Property. Appellee successfully obtained a temporary restraining order preventing F&F, Inc.

---

[1]According to the pleadings, Mr. Sadhegi vanished in February 2004, on the eve of a contempt hearing in the California court, and a bench warrant for his arrest is outstanding.

from foreclosing, and a hearing on Appellee's motion for a preliminary injunction was scheduled for August 10, 2004. The hearing was continued to October 10, 2004, on account of Appellee's brother-in-law's illness.

Shortly before the continued hearing date, on September 23, 2004, the Debtor filed, in the Maryland Bankruptcy Court, a voluntary petition under Chapter 7 of the Bankruptcy Code. A Trustee was appointed to preside over the liquidation of the Property, which was the sole asset of the bankruptcy estate. A real estate agent was retained to sell the Property, which received an initial bid of $850,000 (and ultimately sold for $965,000). Appellants, who hold deeds of trust encumbering the Property, filed proofs of claims establishing that they hold secured liens over the Property totaling nearly $700,000. Appellee did not file a proof of claim but her counsel appeared at the initial creditors' meeting. In subsequent communications, Appellee's counsel indicated that Appellee had no objections to a sale of the Property, provided that the proceeds would be held in escrow pending a final determination of the parties' interests. On March 10, 2005, the Trustee filed a Motion to Sell Property Free and Clear of Liens and Encumbrances (the "Sale Motion"). This motion listed all the claims against the property, including Appellants' liens and the claims asserted by Appellee, and provided that

> The Trustee intends to sell the Property free and clear of all liens and encumbrances . . . . The liens and encumbrances shall attach to the net proceeds from the sale, after deduction of all closing costs, including Realtor Commissions, repair costs, and transfer taxes. The remaining net proceeds shall be deposited into an interest bearing bankruptcy account, where they shall remain until the Trustee is either presented with an agreement or a court order resolving the entitlement of a particular party's interest in those proceeds.

Thus, the Sale Motion appeared to define "net proceeds" as the sale proceeds minus nominal

"closing costs . . . repair costs, and transfer taxes," thereby indicating that the lion's share of the remainder would, in accordance with Appellee's wishes, be placed in escrow pending a final resolution of the parties' claims. However, in a subsequent paragraph detailing the "projected net proceeds" from the sale of the property, the Trustee subtracted from the gross purchase price the closing costs, repair costs, and transfer taxes cited above, *and* the Appellants' secured claims of $185,200 and $472,363. As such, the "projected net proceeds" totaled only $115,902, a small fraction of the anticipated sales price. In addition, while the proposed order attached to the Sale Motion specifically provided for the deduction of closing costs, repair costs, and transfer taxes, it made no express reference to the payment of Appellants' secured liens.

Although Appellants presently argue that "the Sale Motion clearly states that the claims of [Appellants] will be paid" and that "[f]or Appellee to assert confusion when the text within the four corners of the document is clear is disingenuous," the Sale Motion's apparent ambiguity prompted Appellants to file a Limited Opposition, in which they noted that "[t]he Sale Motion is unclear as to whether Mr. Sarrami or F&F will receive immediate payment of their secured claims." The Limited Opposition also stated that Appellants did not consent to the proposed sale unless they would be paid in full at closing. The Trustee did not object to this condition, and Appellants and the Trustee then submitted a Consent Order which explicitly provided that Appellants' secured liens would be paid at closing. The Consent Order was approved by the Bankruptcy Court on April 14, 2005. On April 29, 2005, Appellee filed a an Emergency Motion for Reconsideration, alleging that she had not received notice of the settlement between Appellants and the Trustee and that she would have objected to the sale if she had known that Appellants' liens would be paid at closing. That same day, the sale of the Property closed and the proceeds were transferred to Appellants' counsel, who

4

placed them into an interest-bearing escrow account.

The three Bankruptcy Court orders that gave rise to this appeal followed soon after. On May 3, 2005, the Bankruptcy Court granted Appellee's Emergency Motion to Reconsider Consent Order (the "First Reconsideration Order"). The First Reconsideration Order vacated the Sale Order that permitted the bankruptcy Trustee to liquidate the Property and immediately satisfy the liens held by Appellants. Following hearings held on May 23 and 25, the Bankruptcy Court entered a second order (the "Second Reconsideration Order") on June 2, 2005, which reinstated the Sale Order but directed that the proceeds of the sale be held in escrow pending a final determination of the parties' rights and interests with respect to the Property. On June 13, 2005, the Bankruptcy Court entered an order granting relief from automatic stay (the "Lift Stay Order"), freeing the California court presiding over Appellee's divorce proceeding to adjudicate ownership of the Property as well. Given that the sale of the Property has already taken place, the cumulative effect of the three orders is to preserve the proceeds of the sale until the California court determines whether Appellee has any genuine interest in the Property, and, if so, how her interest might affect the validity of Appellants' liens.

Following the Bankruptcy Court's entry of these orders, Appellants filed joint appeals: Case Nos. 05-cv-1793-AW (appealing the Reconsideration Orders) and 05-cv-1891-AW (appealing the Lift Stay Order). In each matter, Appellants filed a Motion to Stay Pending Appeal. On November 8, 2005, this Court issued a Memorandum Opinion and Order denying Appellants' Motions to Stay and consolidating the two appeals under Case No. 05-1891. (Dkt. Nos. 14, 15.) The consolidated appeal is ripe for review and the Court now issues this Opinion.

## II.    __STANDARD OF REVIEW__

This Court reviews the Bankruptcy Court's findings of fact under the clearly erroneous standard and its conclusions of law *de novo*.  *In re Tudor Assocs., Ltd. II*, 20 F.3d 115, 119 (4th Cir. 1994).  A decision to lift the automatic stay under section 362 of the Bankruptcy Code "is within the discretion of the bankruptcy judge and this decision may be overturned on appeal only for abuse of discretion." *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992); *see also In re Ramarkan*, 315 B.R. 361 363-64 (D. Md. 2004). Abuse of discretion analysis in this context was explained in *McDow v. Official Comm. of Equity Sec. Holders of Crimii Mae, Inc. (In re Criimi Mae, Inc.)*, 247 B.R. 146, 151 (D. Md. 1999):

> An abuse of discretion occurs only when the bankruptcy court relies upon clearly erroneous findings of fact or uses an erroneous legal standard. However, even if a bankruptcy court applies the correct legal principles to adequately supported facts, the discretion of the bankruptcy court is not boundless and subject to automatic affirmance. This court is obligated to review the record and reasons offered by the [bankruptcy] court and reverse if the court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relative factors.

*Id.* (internal citations and quotations omitted.)

## III.   ANALYSIS

### A.   The Reconsideration Orders

Appellants argue that the Bankruptcy Court abused its discretion by granting Appellee's Emergency Motion to Reconsider Consent Order, which had the effect of vacating the Sale Order which provided that Appellants' liens would be paid at closing. They contend that Appellee was estopped from challenging the order because she "knowingly stood by and allowed the Property to be sold without asserting any rights to the Property or to the proceeds. As a result, she waived any claims she may have had in the Property or the proceeds." (Br. at 22.) Appellants cite *In re*

*Colarusso*, 382 F.3d 51 (1st Cir. 2004), for the proposition that "a person who knowingly stands by and allows her land to be sold without asserting her ownership rights waives her claim to the land." *Id.* at 60. *Colarusso*, however, is readily distinguishable from the case at hand; there, the plaintiff participated in a bankruptcy sale as a bidder, had notice of the property being sold to a higher bidder, offered no objections at the time the property was sold, and then, several months later, filed suit asserting that a portion of the land was hers by adverse possession. *Id.* at 55. By contrast, Appellee made her interests in the Property known well before its ultimate sale. Appellee contacted the Trustee soon after becoming aware of his intention to sell the Property and was allegedly assured that the proceeds of any sale would be held in escrow pending a final determination of the parties' interests in the Property. Appellee had no reason to object to the sale itself because of her belief that the proceeds would be protected.

Appellants' reliance on *In re Edwards*, 962 F.2d 641 (7th Cir. 1998) is also unavailing. There, because notice of the initiation of the bankruptcy proceeding was sent to an incorrect address, the plaintiff was not informed of the sale of the property until more than a year after it occurred. By that point, the proceeds of the sale had already been disbursed, leaving the plaintiff with no recourse but to try to persuade the bankruptcy court to vacate the sale order "and by doing so recapture the property for the estate." *Id.* at 643. The court denied this request, noting that the bona fide purchaser of the property would suffer from rescission of the sale and that the "strong policy of finality of bankruptcy sales" provided "strong support for the principle that a bona fide purchaser at a bankruptcy sale gets good title." *Id.* at 645. In the instant case, Appellee does not seek to overturn the underlying sale, but rather collect a portion of the net proceeds, which continue to remain in escrow. The sale itself has not been challenged; the Bankruptcy Judge noted that, pursuant to

7

Section 363(m) of the Bankruptcy Code, the "sale is in concrete." (May 23, 2005 Hearing, Tr. at 82.) Thus, unlike the plaintiff in *Edwards*, Appellee seeks relief that is not irreconcilable with the bona fide purchaser's right to continued possession of the Property.

In addition, Appellants argue that it is "disingenuous" for Appellee to assert that she believed that the "net proceeds" of the sale would include the value of Appellants' secured liens. Appellants maintain that Appellee should have known that Appellants' liens would be paid at closing. Appellants point to the first Sale Motion, which defined "projected net proceeds" as the amount left after payment of closing costs, repair costs, transfer taxes, *and* Appellants' secured claims of $185,200 and $472,363. The Sale Order itself, however, did not indicate that the secured liens would be immediately satisfied. Moreover, as noted above, Appellants themselves appear to have had some doubts as to whether their liens would be paid at closing; in their Limited Opposition, they stated that "[t]he Sale Motion is unclear as to whether Mr. Sarrami or F&F will receive immediate payment of their secured claims" and that their consent to the sale is conditioned upon modification of the Sale Order so that it explicitly provides for the satisfaction of their liens. Given this ambiguity, Appellee's failure to object to the terms of the first Sale Order is not entirely inexcusable. In addition, although Appellee's counsel was served with a copy of Appellants' Limited Opposition, Appellee did not receive notice of the parties' intent to enter the Consent Order. As such, this Court agrees with the Bankruptcy Judge's view, expressed at the May 25, 2005 hearing, that relief from the Consent Order was appropriate because of the lack of notice of the settlement of the Limited Opposition and because of Trustee's representations to Appellee's California counsel that there would be no disbursements to lien holders without notice.

Appellants also contend that, under Section 363(f) of the Bankruptcy Code, they had an

absolute right to object to the sale of the Property and that their approval of the sale depended on provisions in the Consent Order guaranteeing that their liens would be satisfied immediately following the transaction.

Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if —
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which the property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Appellants argue that the Bankruptcy Court's orders deprived them of their right to object to the sale under Section 363(f)(2).

In response, Appellee maintains that the Trustee was entitled to proceed with the sale without Appellants' consent because their interest in the Property was in "bona fide dispute" under Section 363(f)(4). A "bona fide dispute" exists when "there is an objective basis for either a factual or legal dispute as to the validity of the asserted interest." *In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996). This standard "does not require that the Court resolve the underlying dispute or determine the probable outcome of the dispute, but merely whether one exists." *Id.* (citing *In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995) and *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991)). "Although courts have not agreed on a precise definition of 'bona fide dispute,' it clearly

entails some sort of meritorious, existing conflict." *In re Atlas Machine & Iron Works v. Bethlehem Steel*, 986 F.2d 709, 715 (4th Cir. 1993).

The Court finds that a "meritorious conflict" exists regarding the ownership of the Property and the validity of Appellants' liens. The California state court found that Appellee has "established a valid claim to the subject property" and denied Appellants' motion to expunge the *lis pendens* filed by Appellee. Thus, because of the "bona fide dispute" over the ownership of the Property, Appellants' right to object under Section 363(f)(2) was merely illusory, and the Bankruptcy Court did not abuse its discretion when it effectively denied them that "right."

**B.   The Lift Stay Order**

On June 13, 2005, the Bankruptcy Court entered an Order Granting Appellee's Motion for Relief from Automatic Stay. This order lifted the automatic stay imposed under 11 U.S.C. § 362(a) and permitted litigation with respect to the ownership of the Property to proceed in California state court. Appellants argue that this constituted an abuse of discretion because Appellee had failed to establish cause for lifting the stay, as required by 11 U.S.C. § 362(d)(1).

Congress has granted broad discretion to bankruptcy courts to lift a § 362(a) automatic stay to permit enforcement of rights against the property of the estate. *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994). Because the Bankruptcy Code provides no definition of what constitutes "cause" under § 362(d), the courts must determine whether to grant discretionary relief on a case-by-case basis. *Id.* (citing *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992)). The court must balance "potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Robbins*, 964 F.2d at 345. In *Robbins*, the Fourth Circuit Court of Appeals set forth three factors that courts should consider when applying this balancing test:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary;
> (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court;
> (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Robbins*, 964 F.2d at 345. Appellants argue that these factors have not been satisfied in the instant case. In support, Appellants cite *Roberge v. Roberge*, 181 B.R. 854 (Bankr. E.D. Va. 1995), where, in the context of a divorce proceeding, the plaintiff sought relief from the automatic stay so that a Florida state court could rule on the equitable distribution of marital assets. In denying the plaintiff's requested relief, the bankruptcy judge reasoned that it was unnecessary to lift the stay because, in his view, Florida law clearly provided that each party was entitled to 50% of the property, and both the bankruptcy court and the Florida court could, with equal competence and fairness, divide the interest into identical halves. *Id.* at 858. The bankruptcy court also voiced apprehension over the protection of the interests of the debtor's creditors, who were not parties to the divorce proceeding, and noted its concern that it might not have the authority to review or reject the allocation of the marital estate once the state court had rendered its judgment. *Id.* In a similar vein, Appellants argue that their interests as creditors will be jeopardized by the continuation of the California divorce proceeding.

At the outset, this Court notes that despite their reliance on *Roberge*, Appellants fail to mention that the bankruptcy judge's ruling was reversed on appeal, *In re Roberge*, 188 B.R. 366 (E.D. Va. 1995), and that the district court's reversal of the bankruptcy court was affirmed by the Fourth Circuit. *Roberge v. Buis*, 95 F.3d 42 (4th Cir. 1996). The district court found no support for

11

the bankruptcy court's belief, based on its interpretation of Florida law, that the parties were entitled to equal undivided shares of the property. *Roberge*, 188 B.R. 366 at 372 n.5.  The district court also found that lifting the stay would not prejudice the creditors because, had the disputed property issues been settled in the underlying divorce proceeding, the property would no longer have been available to satisfy their claims. *Id.* at 372. In addition, the district court found it particularly significant that the plaintiff's husband appeared to be making tactical use of the bankruptcy process in order to obtain a more favorable distribution of marital property; the court cautioned that to adopt the bankruptcy court's view of the law "would make the Bankruptcy Code a draconian tool in divorce litigation, because one could then avoid an anticipated unfavorable equitable distribution award by filing bankruptcy." *Id.* at 369.

Here, the Bankruptcy Judge also expressed his strong belief that the Debtor's bankruptcy petition was not filed in good faith, stating: "Seldom has the Court encountered a more abusive use of the bankruptcy process than is apparent in this case that was filed for the purpose of thwarting [Appellee's] efforts to recover past due support from property she urges that is not owned by the debtor, but by her husband." (May 25, 2005 Hearing, Tr. at 26.)[2] Bad faith in filing for bankruptcy can constitute cause under § 362(d)(1) for relief from a stay. *See In re Corporation Deja Vu*, 34 B.R. 845, 846 (Bankr. D. Md. 1983); *see also In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*, 216 B.R. 386, 388 (Bankr. D. Md. 1998) ("Circumstances which form cause for relief from stay may include a bad faith filing of the case.").  However, "a finding of bad faith alone does not constitute *per se*

---

[2]In fairness, the Bankruptcy Judge went on to say "This abuse is only matched by [Appellee's] lack of due diligence in the prosecution of her claim in this action. Whether this inaction on her part can be excused by her inability to function, the disability of her attorney or some other reason need not be decided by this court." However, the Bankruptcy Judge ultimately found that, for reasons cited above, Appellee's lack of diligence was excusable.

cause for relief from a stay." *In re Ramkaran*, 315 B.R. 361, 365 (D. Md. 2004). "Ultimately, bad faith is one component of, but not necessarily dispositive of, the balancing test." *Id.*

The record here strongly suggests that the underlying bankruptcy petition was filed to halt a state court proceeding in which Appellee appeared to be making significant headway in establishing her claims to the Property. The California court ruled that Appellee had "established a valid claim to the subject property," denied the Debtor's motion to expunge the *lis pendens*, granted Appellee's motion for a temporary restraining order to prevent Appellant F&F, Inc. from foreclosing on the Property, and scheduled a hearing on Appellee's motion for a preliminary injunction. The bankruptcy petition, which was filed by insiders of the Debtor, came shortly before the continued hearing date. In light of the above, the Court cannot conclude that the Bankruptcy Judge was clearly erroneous when he found that "the only reason for filing this case was to continue the efforts to protect the property from the claims against [Appellee's husband]." ((May 25, 2005 Hearing, Tr. at 26.) As such, the Court finds that there was ample cause to lift the automatic stay.

In addition, the Court believes that the *Robbins* factors counsel in favor of lifting the stay. First, the underlying dispute over the Property only implicates issues of state domestic relations and property law. The Fourth Circuit adheres to "the salutary principle that domestic matters, which include equitable distributions, are primarily for the state courts to decide." *Robbins*, 964 F.2d at 344-45; *see also Caswell v. Long*, 757 F.2d 608, 610-11 (4th Cir. 1985). Second, "judicial economy will not be sacrificed by allowing a state court to determine a matter in which it alone has expertise." *Roberge*, 95 F.3d at *2. To direct the Bankruptcy Court to evaluate the merits of Appellee's claims against the Property, as Appellants urge this Court to do, would not serve to promote judicial economy, particularly given the fact that a California state court has already expended substantial

time and resources in adjudicating the underlying dispute. Finally, the Court does not believe that

lifting the stay would harm the estate or Appellants' interests as creditors. Appellants will not be

prejudiced if they are required to defend the validity of their liens in California state court, and the

Bankruptcy Court would retain jurisdiction subsequently to determine the allowance of claims

against the estate. *See Robbins*, 964 F.2d at 346.

**IV.**     **CONCLUSION**

        For the foregoing reasons, the Orders of the Bankruptcy Court are AFFIRMED.  An

Order consistent with this Opinion shall follow.

January 4, 2006                       /s/
Date                                Alexander Williams, Jr.
                                 United States District Judge